UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MACARENA G. BALDERAS, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:12-CV-42 |
| | § | |
| HIDALGO COUNTY, | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING DEFENDANT'S SECOND MOTION
FOR SUMMARY JUDGMENT

I.     Factual and Procedural Background

Now before the Court is Defendant's Second Motion for Summary Judgment (Doc. 17).

Plaintiffs Macarena G. Balderas and San Juanita Gonzales originally filed suit against Defendant

"Hidalgo County vis-à-vis the Hidalgo County Head Start Program" on January 28, 2012 in the

92nd Judicial District Court, Hidalgo County, Texas.  (Doc. 1-2, Ex. A).  The Defendant County

properly removed the case to this Court on the grounds that the Court had federal question

jurisdiction over Plaintiffs' claims brought pursuant to 42 U.S.C. §§ 1981 and 1983.  (Doc. 1;

Doc. 1-2, Ex. A); *see* 28 U.S.C. §§ 1331, 1441, 1446.  Plaintiffs Balderas and Gonzales alleged

that Defendant terminated their employment as a teacher and teacher assistant, respectively, at

Defendant's Weslaco II Head Start location, after a child in their classroom "[made] his way out

of the building, where he was discovered by the roadway, mercifully before injury, on or about

August 16, 2011."  *Id.* at ¶¶ 4-5.  Plaintiffs alleged that the child was able to exit the building

because the classrooms had no doors, the front door had been propped open for the first day of

school, and no employee was present to monitor the front door.  *Id.* at ¶ 5(b)-(d).  Even so,

Defendant "scapegoated" Plaintiffs, both Hispanic females, as the individuals solely responsible

for the incident.  *Id.* at ¶¶ 6-8.  Plaintiffs claimed that "[t]his…is the type of treatment prohibited by 42 U.S.C. § 1981 prohibiting race discrimination and the due process and equal protection clauses preventing gender discrimination and denial of substantive due process of the Fourteenth Amendment of the U.S. Constitution, 42 U.S.C. § 1983."  *Id.* at ¶ 8.

On January 23, 2013, subsequent to a hearing, the Court granted Defendant's motion for partial summary judgment on any claim made by Plaintiffs for race, national origin, and/or gender discrimination, but allowed Plaintiffs to replead their due process claims.  (Doc. 14). Plaintiffs' "First Amended Original Petition," now the subject of Defendant's renewed Motion for Summary Judgment, reasserts claims under § 1983 for violations of Plaintiffs' due process and equal protection rights under the Fourteenth Amendment.  (Doc. 16).[1]  Plaintiffs allege that they appealed their terminations to the Weslaco II Head Start "Policy Council" while at the same time appealing an initial finding by the Texas Department of Family and Protective Services ("DFPS") that Plaintiffs were responsible for the August 16, 2011 incident.  *See id.* at ¶¶ 9, 14. During this time, DFPS "honed in on the true source of dangerous neglect" and on October 24, 2011, placed the Weslaco II Head Start location on emergency probation to cure a laundry list of floor plan and administrative deficiencies.  *Id.* at ¶¶ 5(h), 6, 7.  Plaintiffs appear to allege that Defendant violated their rights to procedural due process by conditioning Plaintiffs' appeals to the Policy Council on the receipt of a favorable ruling from DFPS within a short deadline set by the Council, not DFPS.  *See id.* at ¶ 14.  Plaintiffs in fact obtained a "clearance" from DFPS, but after the deadline imposed by the Council and therefore after their appeals had been denied.  *See id.* at ¶¶ 5(j), 9, 11.  Plaintiffs also appear to claim that the Council's deadline prevented

---

[1]  Although the Court's order did not specifically allow Plaintiffs to replead their equal protection claims, it also did not enter judgment on those claims.  *See* (Doc. 14).  Therefore, the Court will consider whether Plaintiffs' equal protection claims as amended survive Defendant's renewed request for summary judgment.

Plaintiffs from appealing their terminations through "Civil Service." *See id.* at ¶ 14. Plaintiffs further assert that Defendant violated their substantive due process rights, allegedly by terminating Plaintiffs and refusing to rehire them even though DFPS determined that the County was responsible for the incident in question. *See id.* at ¶ 9, 11. According to Plaintiffs, they "were not reinstated or ever rehired because their clearance [from DFPS] coincided with [the] laying of blame upon the County by [DFPS], for which hard feelings remain." *Id.* at ¶ 9; *see also* ¶ 11. Plaintiffs allege that "[t]he fact that Plaintiffs were scapegoated and offered up by administration as the sole cause of the incident [and] castigated as the official wrongdoers, especially when no one else was, is [conscience]-shocking and a violation of substantive due process." *Id.* at ¶ 9; *see also* ¶ 11. Plaintiffs provide no explanation for the bases for their equal protection claims. *See generally id.*

Defendant now moves for summary judgment on all claims asserted in Plaintiffs' amended pleading. (Doc. 17). Upon consideration of Defendant's Motion, Plaintiffs' response (Doc. 18), and the summary judgment evidence, in light of the relevant law, the Court finds that the Motion must be granted for the following reasons.

## II.  Defendant's Motion for Summary Judgment

## A.  Standard of Review

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

**B.     Due Process Claims**

Finding it dispositive, the Court turns to Defendant's argument that summary judgment must be granted on Plaintiffs' due process claims because the record contains no evidence that Plaintiffs were deprived of any constitutionally protected property or liberty interest. (Doc. 17). The due process clause of the Fourteenth Amendment, which prohibits any State from "depriv[ing] any person of life, liberty, or property, without due process of law," U.S. CONST. amend. XIV, § 1, "has been viewed as guaranteeing procedural due process and substantive due process," *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000). The clause's

procedural component promotes fairness in government decisions by requiring the State to follow appropriate procedures when depriving any person of life, liberty, or property, whereas the substantive component bars certain government actions regardless of the fairness of the procedures used to implement them.  *E.g.*, *John Corp.*, 214 F.3d at 577.  Relevant to this case, a plaintiff making either claim must show that she has been deprived of a constitutionally protected property or liberty interest.  *See Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010); *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006).

"To enjoy a property interest in employment, an employee must 'have a legitimate claim of entitlement' created and defined 'by existing rules or understandings that stem from an independent source such as state law….'"  *Gentilello*, 627 F.3d at 544 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  Under Texas law, a presumption exists that employment is at-will unless that relationship "has been expressly altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated."  *Id.* at 544.  Absent a specific agreement to the contrary, employment may be terminated "'at will, for good cause, bad cause, or no cause at all.'"  *Id.* (quoting *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998)).  Defendant presents evidence that the County hired Plaintiff Balderas as a Head Start teacher on April 23, 2007 and discharged her on November 2, 2011, and that the County hired Plaintiff Gonzales as a Head Start teacher assistant on August 29, 2007 and discharged her on November 30, 2011.  (Doc. 17-3, Ex. B at ¶¶ 4, 5).  Defendant asserts that Plaintiffs have failed to provide evidence of an agreement modifying their at-will status.  (Doc. 17).  Plaintiffs appear to respond that a statement in the County's "Personnel Policy Manual" that its "operations are governed by state…law" gave Plaintiffs an expectation of employment in an "environment," or on "premises," that complied with DFPS standards.  (Doc. 18 at ¶¶ 15-16;

Doc. 18-1, Ex. C).  Plaintiffs do not explain how this statement somehow altered their at-will status, nor do they point to any authority supporting the position that an employee has a constitutionally protected property interest in working in an environment that conforms to state agency standards.  The Court therefore finds that Plaintiffs have failed to place in genuine dispute whether they had the requisite property interest in their jobs with the County.

Plaintiffs' response does not argue that their due process claims are based on the deprivation of a liberty interest.  *See* (Doc. 18).  Further, as Defendant points out in its Motion, the Supreme Court has explained that "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains free as before to seek another."  *Roth*, 408 U.S. at 575; (Doc. 17).  Plaintiffs allege only that they have been prevented from returning to their jobs with the County, and point to no evidence that Defendant has deprived them of the ability to gain other employment.  In sum, the record contains no evidence that Plaintiffs were deprived of a protected property or liberty interest, and for this reason the Court must enter summary judgment on Plaintiffs' due process claims.

## C.    Equal Protection Claims

Defendant argues that Plaintiffs identify no class-based decision made by the County that would implicate the equal protection clause, and therefore summary judgment must be entered on Plaintiffs' equal protection claims.  (Doc. 17).  Again, Plaintiffs' amended pleading does not explain the bases for their equal protection claims; in fact, the pleading mentions the equal protection clause once in the section setting forth the basis for this Court's jurisdiction and venue.  *See* (Doc. 16 at ¶ 3).  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated

alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. CONST. amend. XIV, § 1). The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, as Defendant points out in its Motion, the Supreme Court has also held that "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). The Court in *Engquist* observed that it had "never found the Equal Protection Clause implicated in the specific circumstance where…government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Id.* at 605. The Court found this "not surprising" given the general rule that government employment can be revoked at will, and reasoned that allowing a plaintiff to make an equal protection claim "that the State treated [her] differently from others for a bad reason, or for no reason at all—is simply contrary to the concept of at-will employment." *Id.* at 606. The Court further observed that "[i]f…plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim." *Id.* at 607-08. The Court declined to "'constitutionalize the employee grievance'" in such a way, reaffirming that "'[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.'" *Id.* at 609 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983); *Bishop v. Wood*, 426 U.S. 341, 349 (1976)).

To the extent that Plaintiffs complain that Defendant treated them differently from other similarly situated employees when it terminated their employment and refused to rehire them, *Engquist* forecloses such claims.   Apparently in an effort to overcome *Engquist*, Plaintiffs' response argues that they are part of a "class" of "lower level teachers" deprived of a workplace that conformed to state law.  (Doc. 18).  However, if this is Plaintiffs' equal protection theory, *all* Weslaco II Head Start employees—not just "lower level" ones—were deprived of such a workplace.  The Court finds that Plaintiffs have failed to set forth a cognizable basis for claiming that Defendant deprived them of equal protection, and therefore the Court must enter summary judgment on any such claim.

## III.    Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Defendant's Second Motion for Summary Judgment is **GRANTED**.

SO ORDERED this 12th day of April, 2013, at McAllen, Texas.

Randy Crane
United States District Judge